Fred SMITH, Plaintiff,

v.

CITY OF CHICAGO, and City News Bureau, and Evergreen Media, d/b/a V103, Defendants.

No. 97 C 1865.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 6, 1998.

Bridget P. Ross, Ross & Assoc., Chicago, IL, for Fred Smith.

Justin Paul Erbacci, George John Yamin, Jr., Chicago, IL, Patricia Therese Bergeson, Corp. Counsel, Chicago, IL, for City of Chicago.

Samuel Fifer, Natalie J. Spears, Sonnenschein, Nath & Rosenthal, Chicago, IL, for City News Bureau.

Arthur M. Holtyman, Luka S. Misetic, Pedersen & Houpt, P.C., Chicago, IL, for Evergreen Media.

NORGLE, District Judge.

### OPINION AND ORDER

Plaintiff Fred Smith ("Smith") filed a two count amended complaint alleging defamation by the City of Chicago ("the City"), Evergreen Media ("Evergreen") d/b/a V103, and the City News Bureau ("the Bureau").[1] Count I is brought solely against the City pursuant to 42 U.S.C. § 1983. Count II is a state defamation claim brought against Evergreen and the Bureau. Currently before the court is each Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the City's motion is granted. Smith's remaining count is dismissed, sua sponte, for lack of subject matter jurisdiction. Accordingly, the motions to dismiss filed by Evergreen and the Bureau are denied as moot.

## I. BACKGROUND[2]

The facts of this case are for the most part undisputed and are limited to the events of February 12th and 13th of 1997.

Smith is employed as an On Duty Administrator ("ODA") by Cook County Hospital ("CCH"), where he presently is responsible for providing on-duty administrative coordination of CCH's inter-departmental and inter-agency functions and activities. As such, Smith deals with, among others, hospital personnel, patients, and outside agencies such as the Chicago Fire Department, the Chicago Police Department ("CPD"), and the news media.

While working the evening shift as an ODA on February 12, 1997, Smith received a telephone call from Officer Turlan ("Turlan") of the CPD. Turlan informed Smith that, pursuant to a "new" Illinois law, he wanted a CCH physician to order a blood test on a woman he had arrested for driving under the influence ("DUI"). Turlan also told Smith that an emergency room physician had already refused his request. Smith responded by saying that he would immediately investigate the situation and get back to Turlan as soon as possible. When Smith contacted the emergency room physician, the physician told Smith that she refused to order the test because she did not believe that it was medically necessary. Immediately thereafter, Smith informed Turlan in person that CCH had a duty to stand by its physician's medical decision not to order the blood test. During the conversation, Smith allegedly "conducted himself professionally at all times and did not engage in any argument, conflict, or disrespectful manner toward any member of the CPD." (Am.Compl. at 3 .)

Pursuant to an allegedly official custom, policy, and practice of the CPD, Turlan then made a report to the Bureau. In the report, Turlan and other CPD personnel falsely stated that Smith was "almost and/or nearly" arrested after an altercation he had with Turlan and other police officers. (A detailed account of the encounter is not provided in the pleadings.) According to Smith, one or more CPD supervisors, while acting in an official capacity, explicitly gave permission to make the report and directed Turlan not to disclose his name or any other identifying information.

Upon receipt of the report, the Bureau disseminated its false contents to other news organizations. One of the news organizations that received the report was "V103," an FM radio station owned by Evergreen. On the morning of February 13, 1997, V103 re-

---

**1.** In his original complaint, Smith also sued WLS Television, Inc. and CBS, Inc. However, Smith has since dismissed those parties pursuant to confidential settlement agreements.

**2.** For the purposes of this opinion, the court will deem Smith's factual allegations as true. *See Gutierrez v. Peters,* 111 F.3d 1364, 1368–69 (7th Cir.1997).

ported that "Smith, an ODA at CCH, had been arrested for a DUI and/or had 'almost' been arrested for his behavior with members of the CPD." (Am.Compl. at 6.) According to Smith, the Bureau and V103 published and disseminated the story without reasonable grounds as to its truth, and without contacting the ODA or Public Affairs Department at CCH for confirmation or denial. When Smith returned home from work on the morning of February 13, 1997, he received several telephone calls from his friends, family, and colleagues, all of them had heard the media reports concerning Smith and wanted to know what had happened.

Seeking redress for the humiliation he has allegedly suffered, Smith filed a two-count complaint in federal court. As . amended, Count I alleges that the City, by and through Turlan and other CPD personnel acting in their official capacities, "intentionally, knowingly, maliciously and willfully permitted and/or made misstatements of fact to the media regarding Mr. Smith and depriving [sic] him of his liberty interests pursuant to 42 U.S.C. § 1983." (Am.Compl. at 4.) In the alternative, Smith "alleges that [the City] acted with gross negligence, amounting to a deliberate indifference to his constitutional liberty interests, in violation of 42 U.S.C. § 1983." (*Id.*) As amended, Count II alleges per se defamation, in that the "conduct [of the Bureau and V103] was intentional and/or grossly negligent in their reckless disregard for the truth. Further, [the Bureau and V103] knew or should have known that said statements and acts would certainly and substantially cause Mr. Smith to suffer severe embarrassment, problems within his profession, anxiety and mental distress." (*Id.* at 6.)

Each Defendant now moves to dismiss Smith's complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## II. DISCUSSION

### A. Standard for a Motion to Dismiss

In reviewing Smith's complaint, the court must accept all well-pleaded factual allegations as true, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Gutierrez v. Peters,* 111 F.3d 1364, 1368–69 (7th Cir.1997). At the same time, however, the court need not accept conclusory legal allegations as true. *Cornfield v. Consolidated High School District No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). A complaint should not be dismissed unless "it is impossible [for the plaintiff] to prevail 'under any set of facts that could be proved consistent with his allegations.'" *Albiero v. City of Kankakee,* 122 F.3d 417, 419 (7th Cir.1997) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). "'It is true that the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a claim is based. Nevertheless, a plaintiff must allege sufficient facts to outline a cause of action, proof of which is essential to recovery.'" *Stevens v. Umsted,* 131 F.3d 697, 700 (7th Cir.1997) (*quoting Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir. 1985)).

### B. Section 1983

In support of its motion to dismiss Smith's § 1983 claim, the City argues that: (1) Smith's claim for defamation against the City is not actionable; (2) Smith failed to allege a § 1983 claim against the City; and (3) a § 1983 claim based on gross negligence is not cognizable.

■ "The text of [ § 1983] purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory fights." *Kalina v. Fletcher,* —— U.S. ——, ——, 118 S.Ct. 502, 506, 139 L.Ed.2d 471 (1997). In other words, "[s]ection 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal fights conferred elsewhere." *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir.1997). Thus, "'[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law.'" *Stevens v. Umsted,* 131 F.3d 697, 700 (7th Cir.1997) (*quoting Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996)).

"The first step in any § 1983 analysis is to pinpoint the specific constitutional right which was allegedly violated." *Spiegel* 121 F.3d at 254; *see also Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir.1994). Here, Smith fails to allege that the City violated a specific constitutional right. Rather, Smith merely states that the City "depriv[ed] him of his liberty interests." (Am. Compl. at 4.) Apparently, Smith believes that a defamation claim, standing alone, is actionable under the Constitution by way of § 1983. However, "the Constitution does not forbid libel and slander." *Davis v. City of Chicago,* 53 F.3d 801, 804 (7th Cir.1995) (*citing Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)); *see also Olivieri v. Rodriguez,* 122 F.3d 406, 408 (7th Cir.1997) ("[D]efamation alone by a public officer is not a constitutional tort, because the interest that it invades, the interest in reputation, is not deemed liberty or property within the meaning of the due process clauses of the Constitution....") (citations omitted); *Dishnow v. School Dist. of Rib Lake,* 77 F.3d 194, 199 (7th Cir.1996) ("Defamation ... even when committed by a public body is not a constitutional tort."); *Kernats,* 35 F.3d at 1175 ("Of course, every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation."); *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 31–32 (2d Cir.1994) ("Defamation alone, even by a government entity, does not constitute a deprivation of liberty protected by the Due Process Clause.").

And while the Constitution "does curtail the use of falsehoods that deprive a person of employment," *Davis,* 53 F.3d at 804, Smith does not allege in his amended complaint that he lost his job, was denied employment opportunities, or suffered any adverse employment action as a result of the City's allegedly defamatory statements. As the Seventh Circuit explained in *Olivieri:*

[W]hen the character and circumstances of the [plaintiff's] defamation are such as to have foreclosed his freedom to take advantage of other employment opportunities he can bring a suit based on the deprivation of his liberty of employment or occupation.... The distinction between mere defamation and an infringement of liberty of occupation is merely one of degree, especially when the person relates to a person's fitness for a particular type of employment, but it is a distinction to which the courts are committed.

*Olivieri,* 122 F.3d at 408 (internal quotation marks and citations omitted); *see also Spiegel,* 121 F.3d at 255 (7th Cir.1997) (stating that defamation "can be a component of a constitutional tort" when it deprives a plaintiff of his employability) (*citing Albright v. Oliver,* 975 F.2d 343, 346 (7th Cir.1992), *aff'd on other grounds,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion)), *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1139 (7th Cir.1984) (same); *Colaizzi v. Walker,* 542 F.2d 969, 973–74 (7th Cir.1976) (stating that "infliction of a stigma to reputation accompanied by a failure to rehire (or a fortiori, by a discharge) states a claim for deprivation of liberty without due process...."); *Guy v. State of Illinois,* 958 F.Supp. 1300, 1311 (N.D.Ill.1997) (stating that plaintiff's allegation that defamatory statements "caused her loss of economic opportunities" was not actionable under the Fourteenth Amendment).

Nor does Smith's amended complaint allege that the defamation he allegedly suffered deprived him of any other specific liberty or property interest protected by the Constitution. *See, e.g., Dishnow,* 77 F.3d at 199 (stating that defamation alone is not "a species of liberty or property within the meaning of the Fifth and Fourteenth Amendments"); *see also Smart v. Bd. of Trustees,* 34 F.3d 432, 434 (7th Cir.1994) ("Defamation is not actionable [merely by virtue of its effect on reputation] because reputation is not deemed property within the meaning of the due process clause...."); *Elbert v. Board of Education of Lanark,* 630 F.2d 509, 512–14 (7th Cir.1980) (emphasizing in a defamation case that " § 1983 is not ... a general federal tort law," there must be "an actual loss of a state-granted right."); *Guy,* 958 F.Supp. at 1310 ("To rise to constitutional dimensions, the defamation must not only cause plaintiff a reputational injury, but also

the deprivation of a liberty or property interest."); *Zisis v. St. Joseph Township,* 979 F.Supp. 806, 812 (N.D.Ind.1997) (stating that plaintiff's malicious prosecution claim was not cognizable under § 1983 because he suffered only emotional damages); *Collins v. Hall,* 991 F.Supp. 1065, 1071 (N.D.Ind.1997) (stating that governmental defamation is actionable under § 1983 only when a "liberty interest is implicated by the tangible harm that accompanies the defamation"). Thus, Smith's § 1983 claim against the City is dismissed.

Because Smith's § 1983 is denied forthright, the court need not reach the City's other arguments in support of dismissal. However, the court's cursory review of those arguments indicates that they may be meritorious. *See, e.g., McTigue v. City of Chicago,* 60 F.3d 381, 382–383 (7th Cir.1995) (" 'Boilerplate allegations of a municipal policy, entirely lacking in any factual support . . . are insufficient.' ") (*quoting Baxter v. Vigo County School Corp.,* 26 F.3d 728, 736 (7th Cir.1994)); *Rodgers v. Lincoln Towing Service,* 771 F.2d 194, 202 (7th Cir.1985) (same); *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992) (grossly negligent conduct cannot violate the due process clause); *Graham v. Sauk Prairie Police Com'n,* 915 F.2d 1085, 1100–01 (7th Cir.1990) (discussing "deliberate indifference" as the standard to determine whether municipal policy violates § 1983).

### C. State Defamation Claim

With Smith's federal claim dismissed, the only claim remaining is a state defamation claim against Evergreen and the Bureau. Smith asserts that the court has subject matter jurisdiction over this claim based on diversity of citizenship. *See* 28 U.S.C. § 1332(1997). Though Evergreen and the Bureau argue that Smith's claim should be dismissed pursuant to Fed.R.Civ.P.12(b)(6), the court concludes, sua sponte, that dismissal is required because Smith has failed to invoke the court's diversity jurisdiction under 28 U.S.C. § 1332. *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by the suggestion of the parties or otherwise that the court lacks subject matter jurisdiction of the subject matter, the court shall dismiss the action.").

"Courts in the federal system are obliged to police the statutory and constitutional limitations on their subject matter jurisdiction." *Krueger v. Cartwright,* 996 F.2d 928, 930 (7th Cir.1993) (citation omitted). "Under the rule of complete diversity, if there are residents of the same state on both sides of a lawsuit, the suit cannot be maintained under the diversity jurisdiction even when there is also a nonresident party." *Id.* at 931 (citations omitted); *see also Barbers v. Bishop,* 962 F.Supp. 124, 125 (N.D.Ill.1997) ("Diversity between all plaintiffs on the one hand and all the Defendants on the other must of course be total"), *vacated on other grounds,* 132 F.3d 1203 (7th Cir.1997). To determine an individual's citizenship under 28 U.S.C. § 1332, courts look to a person's domicile, rather than mere residency. *Guaranty National Title Co., Inc. v. J.E.G. Assocs.,* 101 F.3d 57, 59 (7th Cir.1996); *Pollution Control Indust. of America, Inc. v. Van Gundy,* 21 F.3d 152, 155 n. 5 (7th Cir.1994); *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.,* 980 F.2d 1072, 1074 (7th Cir.1992); *Viacom, Inc. v. Flynn,* No. 96 C 3131, 1997 WL 97697, at *1 (N.D.Ill. Feb.27, 1997). Moreover, "a corporation . . . is deemed to be a citizen of any state in which it has been incorporated and of the state where it has its principal place of business." *Krueger,* 996 F.2d at 931; *see also* 28 U.S.C. § 1332(c)(1). In the Seventh Circuit, a corporation's principal place of business is where its "nerve center" is located *Krueger,* 996 F.2d at 931.

■ Because Smith is the party seeking to invoke federal diversity jurisdiction, he bears the burden of demonstrating that the complete diversity and amount in controversy requirements are met. *Chase v. Shop 'N Save Warehouse,* 110 F.3d 424, 427 (7th Cir. 1997); *Van Gundy,* 21 F.3d at 155. As such, Smith was required to identify the respective citizenship of himself, Evergreen, and the Bureau. *America's Best Inns, Inc.,* 980 F.2d at 1074. Additionally, Smith must show, to a reasonable probability, that the amount in controversy exceeds $75,000. *Chase,* 110 F.3d at 427; *see also Schlessinger v. Salimes,* 100 F.3d 519, 521 (7th Cir.1996). Smith has failed to do so.

In his amended complaint, Smith's assertion of diverse citizenship is flawed in several respects. First, rather than providing a complete statement establishing his domicile, Smith merely asserts that he is "employed by the Cook County Hospital." (Am.Compl. at 4.) Second, with respect to the citizenship of the Bureau, Smith deficiently asserts that it "is an entity, doing business within this district during the relevant time period." (Am.Compl. at 4–5.) Hence, Smith is silent as to what type of entity the Bureau is, even though it was his obligation to do the requisite investigation. Moreover, even assuming that the Bureau is a corporation, Smith fails to allege its dual citizenship, *i.e.*, where the Bureau is incorporated and where its principal place of business is located. Third, though Smith does identify Evergreen as a Delaware corporation, he merely asserts that it is "doing business within this district during the relevant time period." (Am. Compl. at 5.) As such, Smith fails to allege where Evergreen's principal place of business is located.

Because the court finds Smith's amended complaint deficient in these respects, it need not address whether Smith's mere assertion that the amount in controversy exceeds $75,000 satisfies the requirements of 28 U.S.C. § 1332(a). *See, e.g., Chase*, 110 F.3d at 426–430; *Barbers*, 132 F.3d 1203, 1204. The court also notes that Senior Judge Shadur previously admonished Smith's counsel regarding defective allegations on these same jurisdictional grounds. *See Nexgen Solutions, Inc. v. Maxim Group*, 968 F.Supp. 379, 380 (N.D.Ill.1997) (dismissing a complaint because counsel "totally ignored [ § 1332(c)(1)'s] plain roadmap"). Dismissal is warranted here because Smith's amended complaint, in its current form, does not invoke federal diversity jurisdiction. Thus, Smith's state defamation claim is dismissed for want of subject matter jurisdiction.

Finally, the court notes that while Smith's § 1983 claim was viable, Smith could have asserted supplemental jurisdiction as the basis to bring his state defamation claim. *See* 28 U.S.C. § 1367(a). Smith did not do so; he instead relied on diversity jurisdiction. Even assuming Smith had relied on supplemental jurisdiction, nonetheless, the court would have declined supplemental jurisdiction over the state defamation claim once it dismissed the § 1983 claim. *See* 28 U.S.C. § 1367(c); *see also City of Chicago v. Intern. College of Surgeons*, —— U.S. ——, ——, 118 S.Ct. 523, 533, 139 L.Ed.2d 525 (1997) (stating that pendent jurisdiction is a matter of discretion); *Vukadinovich v. Bd. of School Trustees of Michigan*, 978 F.2d 403, 415 (7th Cir. 1992) ("It is well established that if federal claims are dismissed before trial, the federal district courts should generally dismiss the state law claims as well."); *Wright v. Associated Ins. Co., Inc.*, 29 F.3d 1244, 1251–53 (7th Cir.1994) (same, but noting three exceptions); *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir.1997) (noting presumption against retention of supplemental state law claims); *Khan v. State Oil*, 93 F.3d 1358, 1366 (7th Cir.1996) (same), *vacated on other grounds* —— U.S. ——, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997).

### III. CONCLUSION

For the foregoing reasons, the City's motion to dismiss is granted and Smith's remaining count is dismissed, sua sponte, for lack of subject matter jurisdiction. Accordingly, the motions to dismiss filed by Evergreen and the Bureau, are denied as moot.

IT IS SO ORDERED.